UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 0 2018

| ANIBAL AVILLAN, | |
|---|---|
| Plaintiff, | |
| -against- | 16 Civ. 5611 (AJN) (RLE) |
| MEGAN J. BRENNAN, *Postmaster General, United States Postal Service Agency*, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

ALISON J. NATHAN, District Judge:

Plaintiff Avibal Avillan, proceeding pro se, brings this lawsuit against Megan J. Brennan in her official capacity as Postmaster General of the United States Postal Service ("USPS"), alleging discrimination and retaliation in violation of federal, state, and city law. Remaining in the case are Avillan's retaliation and discrimination claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA").[1] Now before the Court is Defendant's motion to dismiss Avillan's amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion to dismiss the amended complaint is GRANTED with prejudice.

I.    **BACKGROUND**

   **A. Original Complaint and Prior Motion to Dismiss**

---

[1] Avillan's New York State Human Rights Law and New York City Human Rights Law claims were dismissed with prejudice because Title VII and the ADEA provide the exclusive remedies for federal employees alleging employment discrimination. *See Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) ("Title VII is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex, or national origin." (quoting *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985))); *Bumpus v. Runyon*, No. 94 Civ. 2570, 1997 WL 154053, at *4 (S.D.N.Y. Apr. 2, 1997) ("[T]he ADEA provides the exclusive remedy for federal employees who allege age discrimination."), *aff'd*, 152 F.3d 917 (2d Cir. 1998).

1

The Court assumes familiarity with its September 15, 2017 Memorandum Opinion and Order and the factual background detailed therein. *See* Dkt. No. 19. In summary, Avillan is employed by the USPS as a Laborer Custodian. Dkt. No. 1, at 5-7. On July 14, 2016, Avillan filed his original complaint alleging that the USPS discriminated against him on the basis of race (Hispanic), national origin (Puerto Rican), and age, and retaliated against him for filing employment discrimination claims. Dkt. No. 1, at 1, 2-3. In the complaint, Avillan references the case numbers of, and includes attachments related to, three USPS Equal Employment Opportunity ("EEO") complaints he filed concerning alleged discrimination and retaliation: Complaints 4B-100-0027-14 ("27-14"), 4B-100-0092-14 ("92-14"), and 4B-100-0048-15 ("48-15"). *Id.* at 3, 4, 5-10.

In EEO Complaint 27-14, Avillan alleges that his USPS manager's November 13, 2013 refusal to pay him eight hours of official time for attending EEO matters and denial of access to a maintenance shop steward constituted retaliation for participation in protected EEO activity and discrimination on the basis of race, national origin, and age. Dkt. No. 19, at 2. EEO Complaint 92-14 concerns Avillan's claim that the USPS discriminated and retaliated against him when it stated that he was ineligible for a promotion on July 16, 2014. *Id.* at 2-3. The alleged discriminatory and retaliatory actions in EEO Complaint 48-15 are USPS's (1) refusal to grant Avillan time off to conduct EEO activities in February 2015; (2) refusal to remove his name from a bulletin board; (3) failure to pay him in November and December 2014; and (4) denying him access to a maintenance shop steward at an unknown date. *Id.* at 3.

On November 16, 2016, Defendant moved to dismiss or, in the alternative, for summary judgment. *See* Dkt. No. 9. On September 15, 2017, the Court granted Defendant's motion to dismiss in full, but gave Avillan leave to file an amended complaint. *See* Dkt. No. 19.

## B. Amended Complaint

In response to the Court's September 15, 2017 Memorandum Opinion & Order, on October 17, 2017, Avillan filed an amended complaint. *See* Dkt. No. 21. Like the original complaint, the amended complaint relies on EEO Complaints 27-14, 92-14, and 48-15. *Id.* at 9-12. Avillan reasserts that he has been discriminated against on the basis of race, national origin, and age, and retaliated against for filing previous EEO complaints, a protected activity. In addition, the amended complaint contains further allegations related to the individuals Avillan identifies as comparators, the reasons given by the USPS for denying him leave, and other mistreatment by USPS related to Avillan's employment.

With respect to the comparators, Avillan asserts that "[a]ny Employee that [he] choose[s] in the Manhattan area is similar[ly] situated" to himself. Dkt. No. 21, at 3. Avillan alleges that the employees he previously identified were the same "Craft" as he was, and working at the FDR station when he drafted his complaint. *Id.* In addition, Avillan states that he has "Seniority" over "any Employee in [his] Craft, in the Manhattan District" but that the other employees were promoted despite lacking seniority. *Id.*

As for the reasons given by the USPS for denying Avillan leave, the amended complaint contains a list of "inexplicable excuses" that he alleges are not contained in the EEO "official time Policy and Hand Book." *Id.* Among the 22 reasons listed are "Employee exhausted his EEO time," "Service needed," and "No substantiated Reason." *Id.* None of the reasons listed appear to relate to Avillan's race, national origin, or age.

The amended complaint also contains a variety of factual allegations unrelated to the incidents described in the three EEO complaints. Avillan alleges that in 2003, he successfully completed a ten-week "Maintenance Skills Development Training Program," but did not receive

3

a promotion, unlike all other employees who completed the program. *Id.* at 4. Avillan was informed by USPS in 2004 that he was not placed on a promotion eligibility list because he had not completed a required test in 2000, though that test did not exist that year. *Id.* at 5. In addition, Avillan completed other training programs, but he has not been added to the promotional eligibility list and there is no record of the program completion. *Id.* The amended complaint also alleges that, at various times, Avillan was paid at the incorrect level, improperly deducted leave time, charged "Absent without Pay" hours, wrongfully discharged from the work floor, unjustifiably suspended, and transferred to seemingly less desirable work assignments. *See id.* at 5-6. More specifically, the amended complaint states that on May 10, 2010, Avillan's start time was changed to three hours earlier than his coworkers' start times. *Id.* at 6. The complaint also alleges incidences of "harassment," including the posting of Avillan's picture at the postal facility's employee entrance and breaking into his personal locker. *Id.* at 6-7.

On November 9, 2017, Defendant moved to dismiss the amended complaint in its entirety for failure to state a claim. Dkt. No. 22. On January 23, 2018, the Court received Avillan's response, styled as a "Memorandum in Support Not to Dismiss Plaintiff's Amended Complaint." Dkt. No. 28. Defendant filed her reply on February 6, 2018. Dkt. No. 30.

## II. DISCUSSION

### A. Legal Standards

#### a. Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (cleaned up) (citation omitted) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When a plaintiff is proceeding pro se, the Court holds the pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). That is to say, the Court will "liberally construe" the complaint when deciding the motion to dismiss. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017). However, "[t]he 'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (alteration in original) (citation omitted). If a pro se plaintiff has not pled sufficient facts to state a claim that is plausible on its face, the Court must dismiss his complaint. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Generally, only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, the Court may also consider "documents that are 'integral' to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Helprin v. Harcourt, Inc.*, 277 F.

Supp. 2d 327, 330 (S.D.N.Y. 2003) (citations omitted). For purposes of this motion, the Court will again consider the administrative record of the three EEO charges to which Avillan cites as the basis of his complaint. *See* Dkt. No. 19, at 5 (reasoning that the record is appropriately considered because Avillan had notice of and relied on the information contained therein in preparing his complaint); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006).

### b. Title VII and ADEA Standards

Discrimination claims under Title VII and the ADEA are analyzed under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (Title VII); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128-29 (2d Cir. 2012) (ADEA). However, to survive a motion to dismiss in a Title VII case, "the plaintiff does not need substantial evidence of discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Rather, "absent direct evidence of discrimination," the plaintiff must allege facts that plausibly support "that the plaintiff is a member of a protected class, was qualified, [and] suffered an adverse employment action." *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015). In addition, the complaint must contain "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* A similar "minimal" pleading standard applies to ADEA claims. *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016). A plaintiff bringing an ADEA claim must also allege "that age was the 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 86 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Retaliation claims under Title VII and the ADEA also are governed by the *McDonnell Douglas* framework. *Bucalo*, 691 F.3d at 129. To make out a claim of retaliation at the motion to dismiss stage, the plaintiff must plausibly allege that: "(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (Title VII); *see also Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (Title VII and ADEA). As with discrimination claims, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements." *Littlejohn*, 795 F.3d at 316. However, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. But-for causation does not "require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). Further, a plaintiff may be able to demonstrate causation through temporal proximity. *Id.*; *see also Riddle*, 640 F. App'x at 79.

## B. Discrimination and Retaliation Claims[2]

### a. Complaint 27-14

In dismissing the claims related to Complaint 27-14, the Court found that a refusal to pay for 8 hours of work did not rise to the level of an adverse employment action for purposes of a

---

[2] The Court is not the proper forum to hear Avillan's claims alleging denial of access to a shop steward, as these claims relate to union representation and are not "the subject of a Title VII action." *See Avillan v. Potter*, No. 09 Civ. 4032 (RMB), 2011 WL 1044233, at *4 (S.D.N.Y. Mar. 10, 2011); *see also Akselrad v. City of Philadelphia*, No. 96 Civ. 5192, 1998 WL 32604, at *7 (E.D. Pa. Jan. 27, 1998)) ("To the extent [plaintiff] is claiming violations of the collective bargaining agreement, his remedy was to grieve the violation under the procedures set out in that agreement. To the extent [plaintiff] is claiming an unfair labor practice, the National Labor Relations Board is the proper forum for that complaint."), *aff'd*, 483 F. App'x 637 (2d Cir. 2012).

discrimination claim, nor were there plausible allegations for the proposition that the USPS was motivated by discriminatory intent. *See* Dkt. No. 19, at 9-10. There are no new factual allegations in the amended complaint that alter the Court's analysis as to these claims. Even assuming arguendo that the refusal to pay constituted an adverse employment action, the amended complaint, like the original complaint, does not allege any direct discrimination on the part of the USPS. *See generally* Dkt. No. 21. Avillan could nevertheless have met the pleading requirements by "showing 'the more favorable treatment of employees not in the protected group' who are 'similarly situated in all material respects.'" *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (citations omitted). However, Avillan does not allege that the individuals described in the amended complaint as "similar[ly] situated" requested and were granted payment of official time to attend EEO matters. *See* Dkt. No. 21, at 3. As a result, Avillan's discrimination claim related to Complaint 27-14 is dismissed.

As for the retaliation claim in Complaint 27-14, Avillan's original complaint was lacking because it failed to allege sufficient facts to support an inference of causation. In other words, Avillan did not sufficiently plead facts suggesting that he was denied pay *because* of his filing of EEO complaints, which constitute protected activities. *See* Dkt. No. 21, at 11-13. While temporal proximity can support an inference of retaliatory intent, even the closest-in-time protected activity was "too attenuated to establish that the alleged adverse employment action[] [was] the product of a retaliatory motive absent other supporting factual allegations." *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015). The amended complaint does not dispute that there was a three-and-a-half to nine-and-a-half month gap between Avillan's filing of an EEO complaint and the allegedly retaliatory denial of official time, nor does it contain any additional factual allegations to support a plausible inference that the USPS acted with retaliatory

intent. *See generally* Dkt. No. 21. Avillan has therefore failed to cure the pleading deficiencies in his claims related to Complaint 27-14.

### b. Complaint 92-14

The discrimination claim associated with Complaint 92-14 failed to survive the first motion to dismiss because Avillan did not plausibly allege "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Specifically, Avillan did not allege that the USPS exhibited direct discrimination, nor did he plead factual allegations to plausibly allege that any similarly-situated employees outside the relevant protected groups were treated differently. *See* Dkt. No. 19, at 13-14. Although Avillan did identify three African American males he alleges were treated more favorably, he failed to allege any facts from which the Court could infer that they were similarly situated. Dkt. No. 11, Ex. B, at 29. Indeed, according to the administrative record as incorporated in the complaint, none of these individuals held the same position as Avillan in the same facility. *See id.* at 14.

The amended complaint attempts to address this facial deficiency. Avillan asserts that "[a]ny employee . . . in the Manhattan area is similarly situated," and that the comparators were the "same Craft" as he is and working at the same station. Dkt. No. 21, at 3. The statement that all employees in Manhattan are similarly situated is conclusory, and is therefore unentitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678. The factual allegations that the three other employees were in the same "Craft" and worked at the same facility are relevant to an assessment of whether they are similarly situated, but do not, without more, permit the inference that they worked in the same position or participated in the same application process. *Cf. Mandell v. County of Suffolk*, 316 F.3d 368, 381-82 (2d Cir. 2003) (holding that plaintiff had made a prima facie showing of discriminatory intent when he was passed over repeatedly for

9

open positions in favor of coworkers of the same rank). Indeed, the administrative record, incorporated in the complaint, states that two of the three men had different supervisors, and the third held a different position than Avillan. *See Thomas v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 8934 (JMF), 2016 WL 4544066, at *1 (S.D.N.Y. Aug. 31, 2016) ("[W]hen a court considers documents outside the four corners of a complaint, it is not required to accept as true facts alleged in the complaint that are contradicted by those documents."). The amended complaint has therefore failed to state a claim for discrimination in relation to Complaint 92-14.

The retaliation claim associated with Complaint 92-14 was dismissed in the September 15, 2017 Memorandum Opinion and Order for failure to plausibly allege causation. Although the letter informing Avillan that he was ineligible for a promotion did constitute an adverse employment action, this action did not occur until approximately seven months after he had filed his most recent EEO complaint. *See* Dkt. No. 19, at 14. In its prior decision, the Court concluded that this temporal connection, on its own, was too attenuated to give rise to an inference of but-for causation. *See id.* at 14-15 (citing *Brown*, 622 F. App'x at 20). The amended complaint adds little to the equation. It does discuss, in general terms, the claim that Avillan was denied promotion opportunities because of his EEO activities: it states that Avillan "feel[s] that Management has ... excluded [him] from other Job[] opportunities" after he filed an EEO complaint. Dkt. No. 21, at 6. However, even if the Court could infer that this statement is in reference to the letter received on July 28, 2014, it is a mere conclusion unsupported by any additional factual allegations. Avillan's retaliation claim in Complaint 48-15 is therefore dismissed.

   c. **Complaint 48-15**

10

With respect to the discriminatory acts alleged in Complaint 48-15, the Court previously determined that only the February 11, 2015 denial of a request for eight hours of leave met the timeliness requirements of the EEOC regulations. *See* Dkt. No. 19, at 15. Though timely, the claim that denying the leave request constituted discrimination was also dismissed because Avillan failed to make any allegations giving rise to an inference of discriminatory intent. *See id.* at 16. The amended complaint is similarly devoid of allegations of either direct discrimination or disparate treatment of similarly situated employees who requested leave. *See generally* Dkt. No. 21. Thus, the discrimination claim related to Complaint 48-15 is dismissed.

The claim that the denial of leave was retaliatory likewise fails, as Avillan again has not pled facts other than temporal proximity to support the causation element. The protected activity closest in time to the February 11, 2015 denial was the filing of Complaint 92-14 on October 17, 2014. *See* Dkt. No. 19, at 16. As previously discussed, a gap of four months, without more, is insufficient to allege causation. *See id.* Avillan pleads no new factual allegations in his amended complaint related to USPS's motivation in denying his leave request. The claims related to Complaint 48-15 are therefore dismissed.

### d. Additional Discriminatory Acts Alleged in the Amended Complaint

In addition to the claims related to Complaints 27-14, 92-14, and 48-15, the amended complaint contains various other allegations of discriminatory and retaliatory behavior Avillan experienced in his workplace. Many of these incidents are either undated or occurred years prior to the instant suit. *See* Dkt. No. 21, at 4-8. Claims related to more recent incidents are unaccompanied by any allegations suggesting that Avillan has met the exhaustion requirement with respect to those claims. *See id* at 6. "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a

precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). Accordingly, to the extent that the amended complaint can be construed to assert claims unrelated to EEO Complaints 27-14, 92-14, and 48-15, these claims are also dismissed.

### III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. This resolves the motion at Docket No. 22.

Avillan has already had the opportunity to amend his complaint to address the pleading deficiencies identified by the Court in the prior opinion, but has been unable to do so. Further leave to amend may properly be denied if such amendment would be futile. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). This action is therefore dismissed with prejudice, and the Clerk of Court is respectfully directed to terminate the case. The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). A copy of this Memorandum Opinion and Order will be mailed to the pro se party by Chambers ad its mailing will be noted on the docket.

SO ORDERED

Dated: September __, 2018
New York, New York

ALISON J. NATHAN
United States District Judge